**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ELOISE L. WALKER,** | **§** | |
| **PLAINTIFF,** | **§** | |
| | **§** | |
| **VS.** | **§** | **CIVIL ACTION NO. 4:04-CV-514-Y** |
| | **§** | |
| **JO ANNE B. BARNHART,** | **§** | |
| **COMMISSIONER OF SOCIAL SECURITY** | **§** | |
| **DEFENDANT.** | **§** | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**
**AND**
**NOTICE AND ORDER**

This case is referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A. STATEMENT OF THE CASE

Plaintiff Eloise Walker brings this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of the Social Security Administration denying her claim for supplemental security income or SSI benefits under Title XVI of the Social Security Act. She applied for SSI benefits on November 29, 1999, alleging a disability onset date of February 1993.[1]

[1] SSI benefits are not paid for any months of disability preceding the application for benefits. *See* 20 C.F.R. § 416.335. Accordingly, the relevant inquiry is whether Walker was disabled as of the date she applied for benefits or thereafter.

The Social Security Administration denied Walker's application for benefits both initially and on reconsideration. Walker requested a hearing before an administrative law judge (the "ALJ"), and ALJ Randolph D. Mason held a hearing on May 8, 2002 in Fort Worth, Texas. (Tr. 483). Walker was represented by counsel. On May 28, 2002, the ALJ issued a decision that found Walker capable of a modified range of light work activity limited to jobs requiring simple instructions or instructions at the lower end of detail. (Tr. 15-21). The ALJ concluded that Walker was not disabled or entitled to an award of SSI benefits because her current residual functional capacity did not preclude her from performing her past relevant work. (Tr. 15-21). The Appeals Council denied Walker's request for review of her case, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 4).

B. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). At the third step, disability

will be found if claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work. *Id.* A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.*

This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C. ISSUES

1. Whether the assessment of Walker's residual functional capacity (RFC) is supported by substantial evidence.

2. Whether the ALJ gave adequate attention and weight to the opinions of treating and non-treating medical sources.

3. Whether the ALJ fully developed the record regarding the vocational requirements of Walker's past relevant work.

D. ADMINISTRATIVE RECORD

1. Medical History[2]

Walker was interviewed at Tarrant County Mental Health and Mental Retardation (MHMR) services on September 29, 1999. (Tr. 295). She complained of insomnia, appetite fluctuations, memory and concentration difficulties, fatigue, and auditory and visual hallucinations. She also reported suicidal thoughts of jumping out a window. (Tr. 293, 295). The MHMR clinician diagnosed major depressive disorder. (Tr. 282). Walker was started on the medications Celexa and Trazadone, and was seen on a monthly basis by Davinder Dhingra, M.D., for management of her medications.

---

[2] Walker sought disability benefits based on diabetes, peripheral neuropathy, hypertension, low bac pain, degenerative bone disease, depression, arthritis, and anemia. In seeking judicial review, Walker challenges only the ALJ's assessment of her mental impairments, and a review of the administrative record will be limited accordingly.

Walker reported improvement in her sleep and appetite with treatment, but still experienced hallucinations and feelings of depression. (Tr. 274-80). She thought some of her hallucinations could be due to her other medications. (Tr. 277). The anti-psychotic medication Risperdal was added to her treatment regimen because of her continued hallucinations. (Tr. 268).

Walker continued to report impaired concentration and memory problems. (Tr. 248-80). She began attending computer and vocational training courses sponsored by the Texas Rehabilitation Commission in 2000, but her progress was slow. (Tr. 268). In March 2000, Walker complained of drowsiness as a side-effect of her medications.

Walker submitted to a consultative psychiatric examination on April 3, 2000 with Peter Christian Holm, M.D. (Tr .423). She report audiovisual hallucinations for the previous eight months, but had not had any auditory hallucinations for about three weeks. She had experienced visual hallucinations as recently as two days ago. Her medications had improved her mood and decreased her crying spells, but had not helped with her hallucinations. (Tr. 423-24).

Walker was neatly dressed and groomed. She was cooperative during the interview, but eye contact was somewhat diminished and psychomotor retardation was present. (Tr. 425). Her mood was depressed, with a blunted affect. She denied any psychotic symptoms at the present time and her thoughts were goal oriented, logical, coherent and relevant. Her memory was somewhat impaired, but judgment was intact. (Tr. 425).

Walker lived alone and occasionally performed household chores. Her adult son did her grocery shopping. (Tr .526). Walker attended school three days a week and sometimes went out to eat or engaged in fun activities. She drove occasionally. She rarely read and her ability to cook

and shop was greatly diminished due to decreased motivation and back pain. A typical day involved going to yard sales and attending school. (Tr. 426). Holm found Walker had diminished concentration, adequate persistence, and a mildly slow pace.

Holm diagnosed major depression, recurrent, with a current Global Assessment of Functioning (GAF) score of 45.[3] He assigned a guarded prognosis, but opined that Walker was capable of managing benefits in her own best interest. (Tr. 426-27).

State agency medical consultant Frank Zimmerman, M.D., reviewed the available evidence on April 20, 2000 and opined that Walker's depression resulted in slight restriction in her activities of daily living and social functioning; often caused deficiencies in concentration, persistence or pace; and had resulted in one or two episodes of deterioration or decompensation in work or work-like settings. (Tr. 451). Zimmerman found marked limitations in Walker's ability to understand, remember and carry out detailed instructions. (Tr. 453). He also rated Walker as moderately limited in the ability to maintain attention and concentration for extended periods, perform activities within a schedule; maintain regular attendance and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and accept instructions and respond to appropriately to criticism from supervisors. (Tr. 453-54).

Walker was not considered significantly limited in her ability understand, remember and

---

[3] A GAF score is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning." AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994)(DSM-IV). A GAF score between 41 and 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). *See id.*

carry out simple instructions; sustain an ordinary work routine without special supervision; work in coordination or proximity to others without being distracted or distracting them; interact appropriately with the general public; maintain socially appropriate behavior; and respond appropriately to changes in work setting. (Tr. 453-54). Zimmerman concluded that Walker retained the ability to perform "noncomplex and semicomplex" tasks without special supervision.[4] (Tr. 455).

On April 20, 2000, Walker returned to MHMR. She said she felt less depressed and reported doing better in school. She obtained certificates of completion in May in a keyboarding course and a course on 10-key calculator operation. (Tr. 88-89). On June 30, 2000, Walker complained of problems concentrating and comprehending her school work and had flunked a math course. (Tr. 259). She had been out of her medications for two days and was feeling agitated and nervous. She continued to worry about her grades during follow-up visits at MHMR over the next few months. (Tr. 250-57).

Walker's last recorded date of treatment at MHMR is October 23, 2000. She was alert and oriented, but depressed with an appropriate mood and affect. (Tr. 248). Her thoughts were logical and goal directed, and she denied any auditory or visual hallucinations. Walker was having problems with her financial aid arrangements and reported difficulty concentrating. Dhingra assessed her depression as a level 2 on a scale of 10, with 10 reflecting extreme symptoms. (Tr. 248).

On October 23, 2000, Dhingra also completed a set of interrogatories submitted by Walker's

---

[4] On July 11, 2000, a second state agency medical consultant reviewed Zimmerman's findings and affirmed them as written. (Tr. 444).

attorney. (Tr. 440). Dhingra indicated that Walker was moderately restricted in her activities of daily living and social functioning. Walker was considered markedly impaired in her ability to understand, remember and carry out even simple instructions; respond appropriately to supervision, co-workers, and changes in routine work setting; and deal with work stresses. (Tr. 441). Dhingra also assessed extreme deficiencies in Walker's concentration, persistence and pace resulting in a failure to complete tasks in a timely manner. (Tr. 441). He also opined that Walker could not work on a full-time basis.

2. Administrative Hearing

Walker was forty-seven on the date of the administrative hearing. (Tr. 485). She had tried working as a telemarketer after filing her application for SSI benefits, but was fired after one week because she was too slow, took too many bathroom breaks, and had to stand frequently to alleviate her back pain. (Tr. 486, 496). She had previous work experience as a cook, a line server at a school cafeteria, and a convenience store cashier. (Tr. 487-90). Walker testified that she could not return to her previous work because she had difficulty standing. (Tr. 490).

Walker sought help from Dhingra and MHMR because she was seeing things that were not there. She was tired most of the day and napped frequently. (Tr. 494-95). She also had problems getting along with people she did not know because she had an attitude problem. She testified that she felt overly anxious when she was under pressure. (Tr. 496).

Vocational expert Joyce Shoap also testified during the hearing. Shoap classified the job of cook as medium, skilled work, while the job of line server is considered light, semiskilled work. Work as a convenience store cashier requires light exertion and is an entry-level, semiskilled job.

(Tr. 499). The ALJ asked Shoap to consider the following hypothetical:

> [A]ssume an individual who at the time in question was almost 45 years of age with past work as you have described and a high school education. Let's assume this hypothetical person has a residual functional capacity for only light work with no crawling, stooping, squatting, kneeling, or climbing. And further limited to simple tasks in a routine setting. Would such an individual be capable of performing any of the past work?

(Tr. 500). Shoap indicated that both the line server and cashier jobs would be suitable. (Tr. 500). Shoap conceded that any job involved paying some attention to detail, but she did not consider the line server job to require a high level of detail. (Tr. 510-11).

    3.    ALJ Decision

The ALJ found that Walker had not engaged in substantial gainful activity since applying for SSI benefits and further found that Walker's back disorder, neck disorder, and depression constitute severe impairments. However, the ALJ found no impairments met or equaled any impairment listed in Appendix 1 of the disability regulations. (Tr. 20). Instead, the ALJ found that Walker retained the capacity to perform light work activity, limited to jobs requiring simple or the lower end of detailed instructions and not requiring crawling, stooping, squatting, kneeling or climbing. (Tr. 20).

Based on the vocational expert testimony, the ALJ concluded that Walker's previous work as a line server/counter attendant was compatible with her current residual functional capacity. (Tr. 19). Accordingly, Walker was found not to be disabled at Step Four of the sequential evaluation process. (Tr. 20-21).

E.    DISCUSSION

    1.    Residual Functional Capacity

Walker asserts that the assessment of her residual functional capacity (RFC) is unsupported by substantial evidence because of the ALJ's failure to adequately evaluate medical source opinions about the limitations caused by her mental impairment.

a. Treating Source Opinion

Walker complains of the ALJ's failure to specifically address the interrogatories Dhingra answered in October 2000. Adjudicators must carefully consider medical source opinions on any issue, including issues reserved to the Commissioner. SOCIAL SECURITY RULING 96-5p.Treating source opinions about the nature and severity of a claimant's impairments may be entitled to great or even controlling weight. SOCIAL SECURITY RULING 96-2p. *See also* 20 C.F.R. § 416.927. An adjudicator must give good reasons in his decision for the weight given to a treating source medical opinion. SOCIAL SECURITY RULING 96-2p.

Here, the ALJ did precisely what the regulations and rulings proscribe. There is no mention of Dhingra's opinion and no discussion of the value of that opinion as compared to the other evidence of record. Moreover, Walker was prejudiced as a result of the ALJ's omission. If adopted, Dhingra's opinion would place greater limitation on Walker's mental capacity then the ALJ found and would preclude full-time work. (Tr. 440-41).

The Commissioner asserts that the ALJ recognized his duty to consider all medical opinions, (Tr. 17), and several times in his decision referred to his consideration of "all of the evidence" or "the entire record." Such references, however, do not comply with the regulations or administrative rulings governing evaluation of treating source opinions. The Commissioner further asserts that the ALJ properly gave no weight to Dhingra's opinion and proceeds to provide several reasons why

Dhingra's opinion is inaccurate when viewed against the evidence as a whole. None of these reasons are found in the ALJ's written decision. The ALJ's determination must stand or fall on the reasons set forth in the ALJ's decision as adopted by the Appeals Council. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

The administrative decision should be reversed and remanded so that the ALJ can fulfill his responsibility to weigh all medical source opinions in the record.

        b.        State Agency Medical Consultants

Walker also complains of the ALJ's failure to adequately evaluate the opinions offered by the non-examining state agency medical consultant who evaluated her case. In particular, she asserts that the ALJ's decision conflicts with the opinion of the state agency medical consultant that she was impaired in her ability to understand, remember and carry out detailed instructions.

Findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence (from nonexamining sources) at the administrative hearing and Appeals Council levels of administrative review. 20 C.F.R. §§404.1527(f), 416.927(f); SOCIAL SECURITY RULING 96-6p. The administrative law judge and the Appeals Council are not bound by the state agency physicians' opinions, but may not ignore them and must explain the weight given to these opinions in their decisions. SOCIAL SECURITY RULING 96-6p.

The ALJ reviewed the state agency medical consultant's opinions, concurred with the assessment, and incorporated Walker's limited capacity for detailed instructions into his residual functional capacity finding. (Tr. 19). Walker's complaint that the ALJ gave inadequate

consideration to the opinions of the state agency physicians is meritless.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 12**

2. Past Relevant Work

Walker contends that the determination that she can return to her past relevant work as a line server is a product of legal error, namely, the ALJ's failure to develop the record regarding all requirements of her previous work.

Walker particularly complains that her previous work, as defined in the Dictionary of Occupational Titles (DOT) and as described by the vocational expert, requires a higher reasoning level than her current residual functional capacity permits. The DOT provides the following description of the job of counter attendant (which the vocational expert testified was the equivalent of a line server):

> 311.677-014 COUNTER ATTENDANT, CAFETERIA
>
> Industry Designation: Hotel and Restaurant Industry
>
> Alternate Titles: Server; Steamtable Attendant
>
> Serves food from counters and steamtables to cafeteria patrons: Serves salads, vegetables, meat, breads, and cocktails, ladles soups and sauces, portions desserts, and fills beverage cups and glasses as indicated by customer. Adds relishes and garnishes according to instructions from COUNTER SUPERVISOR (hotel & rest.) 311.137-010. Scrubs and polishes counters, steamtables, and other equipment. May replenish foods at serving stations. May brew coffee and tea. May carve meat. May accept payment for food, using cash register or adding machine to total check. May prepare and serve salads and be known as Salad Counter Attendant (hotel & rest.).

DICTIONARY OF OCCUPATIONAL TITLES 11.677-014 (rev. 4th e. 1991). The DOT also indicates that the job requires a Reasoning Level of 2. "Level 2" reasoning skills require the employee to apply commonsense understanding to execute detailed but uninvolved instructions and deal with problems involving a few concrete variables in or from standardized situations. *See* DICTIONARY OF OCCUPATIONAL TITLES app. C (rev. 4th ed. 1991) (Scale of General Education Development).

The ALJ asked the vocational expert to consider suitable work for a claimant limited to simple work in routine settings, and the vocational expert named the job of line server. (Tr. 500). The vocational expert later reiterated in her testimony that the job would be quite routine for a person who had previously worked in the food service industry. (Tr. 503). Walker's argument that line service requires reasoning abilities above her current residual functional capacity assessed by the ALJ is unsupported by the record.

Walker also contends that the ALJ failed to consider the impact of her need for an unreasonable number or length of rest periods and her impaired ability to accept instructions and respond appropriately to criticism from supervisors. In assessing Walker's residual functional capacity, the ALJ did not find that Walker had either of these limitations. There is no requirement that an ALJ consider the vocational impact of conditions he does not find to exist. However, the ALJ is not precluded from reconsidering Walker's residual functional capacity on remand of this case if deemed necessary.

## RECOMMENDATION

It is recommended that the decision of the Commissioner be reversed and remanded for further administrative proceedings consistent with the foregoing proposed findings of fact and conclusions of law.

NOTICE OF RIGHT TO OBJECT TO PROPOSED
FINDINGS, CONCLUSIONS AND RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until July 12, 2005. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until July 12, 2005 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED JUNE 20, 2005.

/s/ Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE